Thank you, Judge Tallman. My name is David Ness with the Federal Defenders of Montana, and I represent Jose Torres-Guardado. The certified issue in this case is whether appellate counsel rendered ineffective assistance to counsel by failing to appeal the inadequate factual basis for Mr. Torres-Guardado's guilty plea. In short, our response to that question is that it's impossible to tell on this record, and that this case should be remanded for further factual findings. Implicit in the court's question, I think, is a recognition, and the district court recognized, I believe the government would agree, that the factual basis was inadequate in this case. So then the question becomes whether or not appellate counsel should have appealed that. I say that we don't know the answer to that question because I think it depends upon a lot of what was discussed between appellate counsel. And can I just ask, how is it that we don't know what this guy would have done? He was clearly guilty of the conspiracy, right? There was this other person that he got the drugs from, right? There's certainly an assumption to that effect, and that may or may not be correct. Well, let's just start with the plea colloquy itself. Didn't he essentially acknowledge that given that he didn't manufacture the drugs, that he must have gotten them from someone? I think that the court questioned him about that extensively. I think that his, and certainly defense counsel, said something to the effect of, you must have gotten them from somewhere or something. But he never acknowledged where or from whom he got them from. He never made that admission. So what do we do with the fact that the government did have information suggesting that his source was in Denver? Is that information that we can now take into account in deciding whether ineffective assistance was rendered? I think, A, we don't really know what Mr. Torres-Cordato had. The fact that the government submitted the 302 statements, that the government had the 302 statements. They apparently had some statements from the court. The government or the defense? Well, we know for certain the government did. We know that. I would assume the defense had it. Okay. Are you challenging whether or not Mr. Barnes got the 302s in discovery? I think Mr. Barnes got the – I have no personal knowledge of that. But the government, certainly the United States Attorney's Office and the District of Montana is very good about those sorts of things. And I think that Ms. Suick says that they were provided to Mr. Barnes. I have no doubt that they were. But we really don't know whether or not – we really don't know whether or not and to what extent those were discussed between Mr. Barnes and Mr. Torres-Cordato. Well, let me ask you about the plea colloquy with Judge Osby because she specifically – he was obviously being cagey about not wanting to identify others and get them in trouble. That's pretty clear from reading the transcript. But she did ask him, you're charged with conspiring with others. And then he starts to say, I didn't con – well, I guess I did then. Yeah, I did conspire with, I guess, the cooperating witness to sell her some methamphetamine, so I accept that responsibility. And then she asks him again and uses the term others, and he says he did. So that, coupled with the 302s that Mr. Barnes had and, I guess, the fact that those 302s indicate that he'd actually sold drugs to the cooperating informant before the cooperating informant began cooperating, wouldn't that be sufficient to establish a conspiracy? Well, there's a couple of things. And in thinking about especially the second question that Judge Osby asked to Mr. Torres-Cordato, she used the term others. But remember that involved in the sales that he was directly implicated on, the controlled buys, so to speak, they involved the cooperating witness and police officers. So I don't know who – I mean, others is fairly – he sold to the cooperating witness before she started cooperating, did he not? Isn't that what the 302s show? And he did say in court, yeah, I sold drugs to her. I sold drugs to her, and the 302s, yes, they indicate that he sold drugs to the cooperating witness earlier. So if we send this back to the district court and order a hearing on remand, if the remand hearing confirms what the record already suggests, what have we gained from the remand? I think what the remand would clarify one way or the other is, I mean, we need to know what was said between Mr. Varnes and Mr. Torres-Cordato and whether Mr. Torres-Cordato knew about these 302s, whether or not he – remember, all these 302s are from various – they're cooperating witnesses and things like that. No, no, no, I understand. I'm not sure you're answering my narrow question, and maybe I didn't articulate it very well. My narrow question is simply, he admits that he sold drugs to the person who ended up cooperating with the government. I can look at the 302s, which tell me that some of those drug sales occurred before the cooperator was a cooperator, and he admits in open court that he conspired with that individual in the sale of drugs. So what do we gain from a remand? I don't need to know what conversations he had with Mr. Varnes if he admits under oath in open court that he conspired with that person. But we don't know from what period of time the magistrate was talking about when he made the admission that he sold drugs to the – or what period of time he was referring to. Well, doesn't the conspiracy count contain the dates of the conspiracy? I'm sure it does. Well, they say on or about, and I think it goes from August or something. But there's also – I can try to find it, and I think defense counsel's question was interrupted, but he asked something about from January or something of that nature. And so Mr. Torres-Guardado could legitimately admit, yes, I sold drugs to the cooperating witness, so I guess I conspired with her. But that doesn't – the time in which he was referring to isn't narrowed down to any degree. And I think that – Well, don't we have to assume if he's pleading guilty to that count that he's agreeing to that period of time? I certainly didn't see any challenge to the time period of the conspiracy charge in your briefing. Well, I don't think, Your Honor, that that's a necessary element or that the conspiracy existed – you know, the indictment says on or about, and it was on, so he didn't necessarily have to admit that he was involved from August onwards. And he never did. As he said, when the judge kept pressing him – he was pressed on a number of occasions about who else he sold to, who else he dealt from, where he got the stuff from. And he never did acknowledge that he sold to anyone other than the cooperating witness and the police officers. Can I ask a slightly different question? Judge Talman, did you want to follow up? Yeah, absolutely. Well, you said that we need to remand this so that we can find out what conversations took place between the defense lawyer and your client. But given that we're viewing this through the lens of an ineffective assistance of appellate counsel claim, isn't our focus on what the – at least for the deficient performance problem – isn't our focus on what the lawyer knew? And she knew – is it she or he? He. He. He knew that your client was guilty of the conspiracy. He had the 302s at the very least, knew that there was a basis for him to advise your client to plead guilty, knew that if this claim had been raised on appeal, it would eventually lead nowhere because he was going to be found guilty of this conspiracy count. So why – I don't understand why we would need to remand it to find out what conversations took place. Why don't you ask us an interesting question? I tried to find a case on point. And the way I've thought about this is I think that – let's assume for a moment there was a conversation after sentence. Mr. Torres-Guardado was, according to the record, extremely upset at this sentence. He said, I want you to do whatever it takes. You appeal this. It can't get any worse than this. Defense counsel knows that – or looks at it and says, this plea colloquy can be attacked and he can withdraw the plea. Would defense counsel – what then do we look at? Does he look at whether or not that's a viable issue and whether or not that should be raised? Or does defense counsel look down the road and say, well, okay, so I win on this. What's going to happen further down the road? And I would suggest that, especially when we're talking about a guilty plea here, that defense counsel has an obligation. If he thinks that there is a viable issue and he thinks that it's potentially meritorious to attack this guilty plea, that he has an obligation to do that. But where does that get him? I mean, he freely admitted during his plea colloquy with Judge Osby that he distributed drugs to others. So, okay, it goes back. We allow him – or the district court allows him to withdraw his plea. He either pleads anew or he goes to trial on the distribution counts that he's already admitted under oath. He did. And then he gets the same sentence because it's all driven by quantity. I'm still wondering what we accomplish here when I think, if I understand Judge Watford's question, we can see from the record, since we know Mr. Barnes was his appellate lawyer and his lawyer at the plea, we know that a reasonable appellate lawyer could look at this record and say, I'm not going to win no matter what I do here if I re-challenge this. Well, except I think the loss here is his loss to go to trial and his loss to knowingly and intelligently enter into a guilty plea. It is procedural, but procedure is important. Of course it is. But where in the record do we see an indication that Mr. Torres Guardado wants to go to trial? Well, in his 2255 motion, he asked the court in his prayer for relief to vacate and remand, and then he goes on to say something in kind of the next clause about it may also give him the possibility to negotiate a better plea agreement. Negotiate a better plea agreement, but I'm not here, and so I can invoke my right to a jury trial. He doesn't say that specifically, but he's a pro se litigant, Judge Shulman, and he does say vacate and remand. So I can negotiate a better plea. Not so that. I think that's in another clause. Do you want to save some time? I'm fine. I'll save some time. Thank you, Judge. Can I just ask? Good morning. Lori Suth for the government. Do you want Mr. Ness back at the? No, no. Before you even get into the merits, I'm dying to know from just the standpoint of curiosity, why wasn't he charged with a possession with intent count? Just for simplicity's sake. I mean, I will tell you that in hindsight, that certainly would have been the safer course of action, and when we complained to demand, we had a distribution count. I know. Neither one of us had any idea going into the change of plea, either Mr. Barnes or myself, that we would have this problem with Mr. Torres-Guardado. We knew that he was afraid to name his supplier because of fear of retaliation against his family, but neither one of us had an indication that he wasn't going to admit that he got the meth from somewhere. It seemed very simple at the time to just go forward with the conspiracy count. You don't need more than two counts to get exactly the same sentence. The conspiracy count gives us all of the drugs for the time period. You didn't need the conspiracy count to get a greater quantity, right? You had it with the possession with intent count. We had certainly. That's true. Okay. In hindsight, I have to agree with you that we wouldn't be here, we wouldn't have this issue, and certainly if we were in the posture of direct appeal, we would have some issues with this colloquy. I'm not sure the government would have stood here and said, no, the colloquy is completely deficient, because as Judge Tallman has pointed out, there were some facts implied, certainly a little bit even more than implied, because, yes, he did work with the cooperating witness for a period of time prior to the witness becoming a government agent. We're here to decide whether there is any need to have an evidentiary hearing to decide if counsel, appellate counsel, was deficient. And then even if we get past that prong, whether there was any prejudice. And Mr. Varnes knew what you know now from the 302s. And, in fact, the posture of this case, he knew even more than that. We were set for trial the next week after this change of police. So he not only had all of that information, all of these witnesses were subpoenaed. That's what he knew. And then he knew on appeal that the best that he could do for Mr. Torres-Guardado is to try and get this sentence reduced, because certainly there was not going to be any benefit to him to come back and redo the change of plea. So when you negotiated the plea, did the defendant not know that he was going to be found to be a career criminal? I was not privy to those discussions to know. And he certainly was mad about that. Yeah, I would have been too. But he had, on the pretrial services report, it was based on criminal convictions that he had. I cannot tell you. You didn't discuss that with the defense counsel? I did not, no. We knew. I'm sorry. The reason to me that could be significant is that now I don't have any doubt that if he knew he was going to get 27 years for this, I think he probably would have gone to trial. I'll have to disagree with you, Judge Watford. He wouldn't have, because he got acceptance of responsibility points here, which made a difference. And for purpose. You got 27 instead of 29 or something? It reduced it from a base offense level 37 to a 34. With a criminal history category 6, in that area of the guidelines I don't have it in front of me, but it's not just a couple of years. This can add up to four to five to six years very quickly. That was just the obvious benefit to him. The other benefit in these drug cases, the drug quantity never goes down at trial. These witnesses are questioned more specifically about all of their dealings and certainly the drug quantity was what it was and high enough at sentencing. It could have gone higher if you read the 302s. And Mr. Varnes knew all of this. And so when he made the decision to simply challenge the sentence on appeal, he was doing what he could to benefit his client. Coming back now to the beginning, first of all, there's no guarantee that the government would give him a plea agreement again or a direct appeal that the government would give him a plea again. But how do you respond to defense counsel's argument, which sounded to me right, that that's not for the defense lawyer to make. That's for the client to decide whether it's worth his while to have the plea vacated so that he can go back and do something different. That might be right on direct appeal, but it's not the question that we answer here at 2255. What you need to answer here is whether counsel, what did he know, and whether his performance was deficient, and whether in judging that calculus he was making that decision because it would benefit or prejudice his client. And there's – I would say this. Looking at the record, the plea colloquy I think quite arguably was deficient. I mean, there's merit to that argument. There's an argument to be made. So it's not like a competent appellate lawyer could look at that record and say, oh, you know, there's no way I'm going to prevail on this claim, right? No, that's true. But a competent appellate lawyer would also say, if I prevail, what would I be doing for my client? That's what I'm saying. That's for the client to decide. That's not for the lawyer to unilaterally just decide, you know what, it's not worth my client's while for me to win on this argument on appeal. But at this stage, at a 2255, it was that deficient for the appellate attorney to make that decision for the client. If you say that that was a decision totally made by the defense lawyer, he stopped any further prejudice of his client in my view. What case do you have that says that we're supposed to judge the appellate lawyer's effectiveness, not on the basis of what the client might want, but on the basis of what the appellate lawyer might think is best for his or her client? I don't have a case for you. I would think if you've got a winning argument and your client is telling you, I want you to do everything you can to get me out of this jam, it's not for you as the appellate lawyer to decide, well, you know, I could win on this, but I don't think it would do you much good, so I'm not going to bother. Well, and then we can play it out as to what, if he did that and if he won, and then if Mr. Torres-Guardado went back to the district court, didn't receive a plea, and got more of a sentence, these are all of the factors that the appellate counsel is considering. And what you must consider is whether he was deficient in making that call at the time. Your argument is both, though, is it not, that it's not deficient for appellate counsel to factor that ultimate result into a determination not to pursue this issue, but doesn't it also go to the question of whether or not appellate counsel acted in such a way that prejudice or that Mr. Torres-Guardado would have been prejudiced by not pursuing the appellate issue? Absolutely. If you get past deficient performance, prejudice here is certainly something that Mr. Torres-Guardado did not suffer. In fact, the decision, in the government's view, benefited him, that he was not going to get any better deal, any better sentence, and it could have only gotten worse for him if we went back to the district court. So when you look at prejudice then, are you saying that you don't look just at the prejudice at the appellate level? Because let's assume that it had been successful on appeal and was remanded. You're looking back then to prejudice at what would happen on remand, is that it? Certainly. And Mr. Torres-Guardado has never said, first of all, that he wanted a trial, or that he's factually innocent, or any of those factors that I think would maybe tip the scale here. He has not alleged that he would do anything but want to go back and try and bargain for a better plea deal. And I guess I just, again, from the client's standpoint, what's wrong with that? He has no leverage now. He's sitting in prison for 27 years. From his standpoint, maybe he figures, I'd rather roll the dice and see if I can get something better from you. Well, he certainly can believe that, Judge Watford, but we're judging it as to whether it was deficient for appellant counsel to make a different call and whether he would have suffered any prejudice if you get past that question. I have been struggling trying to understand what the Supreme Court is telling us as to the continued viability of the Coleman rule in light of Martinez v. Ryan and Maples v. Thomas. But it seems to me that he has to establish, at this point, cause and prejudice because of the fact that the claim was not raised on direct appeal. And so inherent in the prejudice analysis, in order to prove the exception, has to be an assessment of what his chances, in essence, of improving his situation would have been had this claim been pursued and he was permitted to set the plea aside and go back to the district court. I would agree, Your Honor. And so he can't meet that heightened test that the Supreme Court has set as a narrow exception to find prejudice of appellate counsel. He can't. There's no improvement here. There's nothing that he could have gained by winning that argument on appeal. Because otherwise we're just left to speculate as to what might have happened. Well, and you don't really even have to speculate. The evidence here was very, very strong. No, no, no. But I ask the question from the standpoint of the burden is on him. It is, yes. To show. And the problem, I'm trying to tease out Judge Watford's concern, the problem on the prejudice prong is he can't meet his burden of establishing prejudice because at best he can only speculate as to what the government might have done. Right. Or what the district court might do if he pled anew and got resentenced. Yes. At this point there's nothing in the record to suggest that he would do any better than he did the first time before. Okay. I think I understand. Any further questions? I would just end by saying I do agree, though, that if you remanded for an evidentiary hearing probably in about another year, we would be back here in the same position because we believe the record shows you what Mr. Varnes knew. And an evidentiary hearing, we wouldn't gain anything by that. It would simply delay this process needlessly.  Thank you. Mr. Ness? I guess just briefly, I've been struggling with the recent Supreme Court decisions as well, but I guess in this case I go back to Hill and Monzon and Temerack, and the real issue here, I think, is whether or not Mr. Torres Guardado would have pled guilty, would have gone to trial. I would continue with my argument that at the very least, and I think even more than at the very least, the plea colloquy and the factual basis is insufficient here. So then the question becomes what he told his lawyer, and if he told his lawyer, I want to withdraw my plea and this lawyer looking at this record didn't raise that, I think that a decision affirming that would contravene Hill and Temerack and those kinds of cases as well as even this case in Monzon. Remember, we don't look at whether or not the defendant is acting foolishly or whether he's making a wise decision. What we're looking at is whether or not he would have exercised his right to go to trial. And this case is in a weird posture because then the issue doesn't arise until on appeal. But counsel, you agree, though, that to show prejudice, it's not enough for him to just want to get another crack at striking a new and better plea bargain. He has to show that he actually would have exercised his right to go to trial. I would agree with that. He doesn't just get to go back and try to. And knowing the United States Attorney's Office, I don't think they're going to offer me anything. I'm fairly sure about that. I'm not hearing anything. And I wasn't expecting anything. But, no, I would agree with that, yes. No further questions. All right. Thank you. Thank you both. The case just argued is submitted.
judges: Gleason, Tallman, Watford